## WILL VINCENT v. THE STATE.

No. 2798.   Decided December 10, 1913.

Rehearing denied January 14, 1914.

**1.—Carrying Pistol—Sufficiency of the Evidence.**

Where, upon trial of unlawfully carrying a pistol, the evidence sustained the conviction, there was no error.

**2.—Same—Intent—Place of Business—Pawn Shop.**

Where, upon trial of unlawfully carrying a pistol, the defendant claimed that he had the right to take his pistol from his home to his place of business to pawn it in a business transaction and failing therein to carry it back home without violating the law, and submitted the matter to the court without a jury, and the court, under the testimony, was authorized to believe that defendant did not carry a pistol for such purpose, but was carrying it for the purpose to use it in a row between his wife and another for the purpose of shooting it, the conviction was sustained. Davidson, Judge, dissenting.

Appeal from the County Court of Harris.   Tried below before the Hon. C. C. Wren.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Henry Faulk* and *R. H. Holland,* for appellant.—On question of insufficiency of the evidence:   Lewis v. State, 52 Texas Crim. Rep., 7; Foster v. State, 59 Texas Crim. Rep., 44, 126 S. W. Rep., 1155; Quinn v. State, 50 Texas Crim. Rep., 209; Fields v. State, 45 id., 563; Granger v. State, 50 id., 488; Hunt v. State, 52 id., 477.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was tried before the court without a jury, charged with unlawfully carrying a pistol, and his punishment fixed at the lowest prescribed by law.

The only contention by appellant is that the evidence is insufficient to sustain the conviction.   Or that the evidence shows, without contradiction, that he had the right to carry a pistol at the time and place he did so, and should have been acquitted.

Appellant has a bill of exception in the record making said contentions wherein he gives the evidence in full, heard on the trial.   The court, in approving the bill, qualified it by stating that he did not believe the defendant and his witnesses' testimony to be true.

It is unnecessary to give any extended statement of the testimony. The State proved by uncontradicted testimony that the appellant had the pistol on or about his person at the time and place charged in the indictment.   In fact, the appellant and his wife both positively so testified, in addition to the State's testimony.

The appellant testified that on August 17, 1912, he spoke to Dan

Carmichael, with whom he was working in the railroad shops at Houston, and made arrangements to borrow from him $10 and secure the loan by the pawn of his pistol; that Carmichael at that time agreed to make him the loan of $10 and take his pistol as security; that on August 19th he took the pistol from his home to the railroad shops for the sole purpose of pawning it to Carmichael for said loan; that when he then took the matter up with Carmichael, Carmichael told him he couldn't loan him the $10 but that he would loan him $2 without any security and that he could take his pistol back to his home; that he and Carmichael then examined the pistol and found it rusty and the cylinders wouldn't revolve, cleaned it up and got it in good working condition and that he left it there until the next day; that as he went to leave for home on that morning, the day on which he was charged with carrying a pistol, his wife told him that some sister of the lodge to which she and the sister belonged, had made some charges against her and a negro named Davis for improper conduct and violating some rules of the order, and that she was going there that evening between 5 and 6 o'clock to have the charges tried, or cleaned up, and for him to stop by there as he returned from work and call for her and she would go home with him; that the hall was on his direct route back and forth from his home to his place of work; that he always quit work at half past 5 in the evening and had to wash, which he did, and got his lunch basket and then took his pistol with him; that when he got to the hall with his pistol he waited some ten minutes or more for his wife to come out and that he sent some sister of the lodge in to tell her to come. After he had been waiting for this ten minutes or longer, he heard his wife screaming, holloing and calling for him; that at that time said negro Davis appeared at an opening of the lodge hall, and began to shoot at him and he got his six-shooter out and returned his fire, shooting at Davis twice. Neither hit the other. That he would not have stopped at said hall on this occasion if it had not been the request of his wife that morning to do so.

His wife testified and in some particulars corroborated his testimony. However, she says she told him that some woman had made charges against her about violating some rules of her lodge and she was going there that evening between 5 and 6 o'clock to clear up the charges, and that she knew her husband would pass along there about that time and she told him to stop for her at that time and she would go home with him; that she was inside of the hall along about that time and a woman and a man, evidently this man Davis, began beating her and pulled her hair and cursed her and that she screamed and holloed for her husband as loud as she could and he responded to her call and the shooting took place.

Carmichael testified corroborating appellant about the contemplated loan and pawn of the pistol to secure it, the cleaning it up at the particular time it was, and putting it in first class shooting condition

and that appellant took it with him on that particular evening to take the pistol back home.

Judge Davidson has written and presented in consultation an opinion herein wherein he contends that as the testimony was uncontradicted about said proposed loan and pawn of the pistol, and that said hall was on the direct route of the appellant between his home and place of work and that he passed there back and forth from day to day, and as the State introduced no evidence to contradict appellant and his witnesses in these matters, a jury trying the case, or the court in this instance who tried it without a jury, could not arbitrarily discard their testimony. And that for the purpose of yawning his pistol appellant had the right to carry it back and forth from his home to his place of business, and that having failed to carry it back home, and the fact that he incidentally got into trouble going home would not militate against the fact that he had a right to carry the pistol home.

We think Judge Davidson has misapprehended the material facts on these questions. It might be that a man would have the right to take his pistol from his home to his place of business to pawn it in business transaction, and, failing in it, to carry it back home, without violating the law, yet, the evidence in this case is such as the court unquestionably could believe as he did, that appellant did not carry this pistol back and forth for that purpose, and his, his wife's and his witness Carmichael's testimony on that point was untrue; and the testimony would clearly authorize the court to believe that the appellant did not carry his pistol to his place of work for that purpose, but that he carried it there for the purpose of fixing it up in first class shooting condition and that he did so on this particular occasion so that he could be on hand with it when his wife had her trial and when called upon, produce it and shoot Davis. He says his wife told him some sister had made charges against her for improper conduct with said negro man Davis, and the court could well believe he carried the pistol on that occasion for that purpose, and not for the purpose of taking it back home, failing in pawning it. In other words, it shows and justifies the court to find that he anticipated a row between his wife and Davis and the sister who had preferred charges against her, and that he prepared this pistol and took it to that place at that time for the purpose of having it ready to shoot down his wife's accusers when she called on him for that purpose, and that she did call upon him, knowing that he would be there and was there at the time, and that he prepared himself for the scrap and took his pistol with him for no other purpose; and true to this purpose and intention he promptly responded with his six-shooter, firing at her antagonist twice, when she called for him.

All these witnesses were before the judge of the lower court personally. He saw them, heard their testimony, their manner of testifying and all the facts and circumstances connected therewith. The law makes him, and not this court, the judge of their credibility. This court has

no power, right or authority to tell the jury or the court below, that they shall believe and not disbelieve the testimony of the defendant and his wife and witness even when there is no direct testimony by the State disputing them. The lower court and the trial jury are very much better qualified to judge of the veracity of a witness and believe or disbelieve them, if no one expressly contradicts them, but the circumstances contradict them, than this court can possibly be from a written statement of the facts.

The evidence, without controversy, shows that appellant carried the pistol on his person at the time charged in the indictment, and the circumstances clearly justified the lower court to believe, as he did, that the testimony of the appellant and his witnesses about pawning this pistol at this particular time was false, but, instead, that he prepared himself, anticipating a row and fight at this particular time between his wife and her accuser or accusers, and that he took this pistol with him and had it on this occasion for the express purpose and for no other purpose than to shoot her accusers, or attempt to do so when she called upon him for that purpose, and that he waited there with the pistol for that and no other purpose and carried out his purpose. And that the lower court was amply justified in believing that the testimony of the appellant and his witnesses as to the purpose for which he had and carried the pistol on this occasion was false.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied January 14, 1914.—Reporter.]

DAVIDSON, JUDGE (dissenting).—Appellant was convicted for carrying a pistol, his punishment being assessed at a fine of $100.

It is conceded that appellant had the pistol, and he fired it at another negro, the defendant being a negro. The State's witness says he saw the defendant with the pistol on the occasion mentioned, which was near a building on one of the streets in Houston, and saw him fire it into the door of the house. Appellant and two other witnesses testify that a day or two before appellant was seen with the pistol he had made an agreement with Carmichael for the lending of some money to him by Carmichael, the pistol to be placed in pawn as security for the money, which was ten dollars. This money he sought to borrow to pay the expenses of his wife to Marlin from Houston. Leaving home in the morning for his place of business, where Carmichael was also engaged in business in a machine shop, he carried the pistol in his lunch basket. Upon reaching the place he and Carmichael examined the pistol and found it rusty; they cleaned it. Carmichael declined to let him have ten dollars on the pistol, but did let him have some money without taking the pistol as security. At the time he was seen with the pistol he was en route home, and on his direct and usually traveled route home. Upon leaving his place of business he wrapped the pistol in some paper and placed it in his lunch basket. His wife,

in the morning upon his leaving home, informed him she would be at this particular house, which was a negro lodge. She requested him to call for her on his return that evening from his work. She had been summoned there for some reason by the lodge. On his return home she was to accompany him from this lodge. Reaching the building he stopped and sent word to his wife that he was waiting for her. Before the messenger returned he heard his wife screaming and holloing for his assistance. A man and woman were beating her. He immediately got his pistol out of the basket and ran to one door, but finding it closed he ran to another. Upon reaching that door a negro on the inside fired at him. He returned the fire. This released his wife. She came and accompanied him to a policeman or officer named Gordon, he carrying the pistol with him. He surrendered and was charged with assault to murder as well as for carrying the pistol. The assault to murder case was tried in the District Court; carrying the pistol case was tried in the County Court at law. He was acquitted of assault to murder. These are, in substance, the facts. The State introduced no evidence to contradict his statement or the statement of his wife, or the testimony of Carmichael.

The State did not controvert nor seek to controvert the defensive evidence, therefore there was no conflict. Eliminate the State witness' evidence and the case remains the same on the facts, so far as appellant having the pistol is concerned. Appellant had the legal right to carry the pistol to his place of business, and he had the legal right also to return it to his home. He had the further right to carry it to Carmichael to pledge or pawn or trade it. Failing in this, he had the further right to carry it back home. The only evidence the State introduced was the fact that appellant had the pistol and fired it. Appellant testifies to the same facts, but excuses it under the evidence stated. The State did not offer any testimony in rebuttal showing or tending to show, in the remotest degree, that the testimony of Carmichael, appellant and his wife was untrue. Therefore, I repeat, there was no conflict in the evidence, and defendant's evidence stands uncontroverted. Where there is a conflict in the testimony the jury, or the court, in the absence of the jury, trying the case, may pass upon and decide that question, but if there be no conflict, then the jury nor the court is authorized arbitrarily to discard the testimony. The evidence in that event would not be sufficient. I understand this to be the settled rule of law, and if it is not it ought to be. Dillingham v. State, 32 S. W. Rep., 771; Impson v. State, 19 S. W. Rep., 677; Sanders v. State, 20 S. W. Rep., 556; West v. State, 21 Texas Crim. App., 427; see especially Irvine v. State, 18 Texas Crim. App., 51. That appellant had the right to carry his pistol to his place of business and return it home has been settled by an unbroken line of authority in this State. See Lewis v. State, 52 Texas Crim. Rep., 7; Upton v. State, 33 Texas Crim. Rep., 231, 26 S. W. Rep., 197; Snider v. State, 43 S. W. Rep., 84; Zollicoffer v. State, 43 S. W. Rep., 992; Foster v. State, 59 Texas

Crim. Rep., 44, 126 S. W. Rep., 1155; Craine v. State, 42 S. W. Rep., 302; Mathonican v. State, 51 Texas Crim. Rep., 471; Campbell v. State, 28 Texas Crim. App., 44. It has also been decided in an unbroken line that the accused has the right to stop en route home and demand an explanation of an insult to his wife, had he even done so. Quinn v. State, 50 Texas Crim. Rep., 209. He could also have legally taken it to where he had the difficulty to protect his wife, had he known she was going to be in trouble, or if he anticipated that she would be in trouble. Barkley v. State, 28 Texas Crim. App., 99; and it would make no difference that it was loaded. Pressler v. State, 19 Texas Crim. App., 52; West v. State, 21 Texas Crim. App., 427; Fields v. State, 45 Texas Crim. Rep., 563. Nor is he required to pursue the shortest route home. Granger v. State, 50 Texas Crim. Rep., 489; Brent v. State, 57 Texas Crim. Rep., 411, 123 S. W. Rep., 593. In this particular case, however, appellant was pursuing his accustomed route from his place of business to his home, and it is even shown to be the shortest route. And it is further testified beyond controversy that he was not in the habit of carrying his pistol between his place of business and his home. He had only this one time carried it to his place of business for the purpose stated in the testimony, and was carrying it back home at the time he got into the difficulty with the other negro, and there is no controversy on this question. For full collation of the authorities see Branch's Crim. Law, sec. 190. The evidence in this case does not justify this conviction, and this negro ought to have been acquitted.

For the reasons above indicated I most respectfully enter my dissent.